IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| JOSEPH DIGENOVA,<br>   Plaintiff,<br><br>vs.<br><br>UNITE HERE LOCAL 274, ET AL.,<br>   Defendants. | CIVIL ACTION<br><br>NO. 16-1222 |
|---|---|

### MEMORANDUM RE DEFENDANTS' MOTION TO DISMISS

**Baylson, J.**                         **June 6, 2016**

  *Pro se* plaintiff Joseph DiGenova ("Mr. DiGenova") alleges that his rights under the Labor Management Reporting and Disclosure Act of 1959 ("LMRDA"), § 101, 29 U.S.C. § 411 *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. C.S.A. § 951 *et seq.*, have been violated. Specifically, Mr. DiGenova claims that his union, defendant UNITE HERE Local 274 ("Local") and "Director of Hotels," Mike Mullins[1] ("Mr. Mullins" and, together with Local, "Defendants"), discriminated against Mr. DiGenova based on his age and subjected Mr. DiGenova to retaliatory actions for his filing of complaints with the Pennsylvania Human Rights Commission ("PHRC").

  Defendants move to dismiss Mr. DiGenova's claims. For the reasons stated below, the Court grants Defendants' motion and dismisses Mr. DiGenova's Complaint in its entirety, with prejudice.

---

[1]   As stated in Defendants' Motion to Dismiss, Mr. DiGenova provided an incorrect spelling of Mr. Mullins' last name throughout his Complaint. (Defs.' Mem. Supp. Mot. Dismiss ("Defs.' Br."), ECF 4, at 1 n.1).

1

## I. BACKGROUND

Mr. DiGenova is a banquet server who is a member of Local. (Compl., ECF 1, at 1).[2] Local is a union that represents various food and hotel service workers in the private sector.[3] Mr. DiGenova alleges that he was not referred for work by Defendants on the following dates: December 31, 2015; February 6, 2016; February 20, 2016; and February 27, 2016. (Compl. at 3). Mr. DiGenova further alleges that Local's refusal to refer him to work is ongoing. (Compl. at 3, 4). According to Mr. DiGenova, Mr. Mullins informed the union hall booking agent not to refer Mr. DiGenova to work because of certain "letters." (Compl. at 3). Defendants indicate that these "letters" were "from food service establishments banning [Mr. DiGenova] from working for them." (Defs.' Mem. Supp. Mot. Dismiss ("Defs.' Br."), ECF 4, at 1). However, these "letters" were not in Mr. DiGenova's file with Local as of February 3, 2016. Mr. DiGenova attempted to file grievances, based on the foregoing, with Local. (Compl. at 3). Despite various attempts, Mr. DiGenova was unable to file these grievances, of which he claims there are now four (4) grievances that he has as of yet been unable to file. (Compl. at 3).[4]

Mr. DiGenova is seeking $200,000 in lost wages, and is also seeking compensation for training other banquet servers. (Compl. at 5).

## II. STANDARD OF REVIEW

### A. Rule 12(b)(5)

Proper service of process is a pre-requisite to the court's personal jurisdiction over a defendant. <u>Lampe v. Xouth, Inc.</u>, 952 F.2d 697, 700-01 (3d Cir. 1991). Therefore, it must be

---

[2] As the pages of the Complaint are not numbered, the Court will use the ECF legend for ease of reference.
[3] UNITE HERE PHILLY, http://uniteherephilly.org (last visited June 3, 2016).
[4] As part of his Complaint (Compl. at 9-11), Mr. DiGenova includes various pages from a previous complaint filed with this Court in a previous action, styled *UNITE HERE Local 274 Banquet Servers A List et al. v. Sheraton University City/MS Employment et al.*, No. 13-3787. This Court dismissed the amended complaint in that action without prejudice, and the case was terminated, on November 25, 2013.

decided at the onset of a case. Lampe, 952 F.2d at 701. In a motion to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(5), "the party asserting the validity of service bears the burden of proof on that issue." Grant Entm't Grp., Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 488 (3d Cir. 1993). That party must do so by a preponderance of the evidence using affidavits, depositions and oral testimony. State Farm Mut., Auto. Ins. Co. v. Tz'doko V'Chesed of Klausenberg, 543 F. Supp. 2d 424, 428 (E.D. Pa. 2008).

**B. Rule 12(b)(6)**

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court may look only to the facts alleged in the complaint and its attachments. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994). The Court must accept as true all well-pleaded allegations in the complaint and view them in the light most favorable to the plaintiff. Angelastro v. Prudential–Bache Sec., Inc., 764 F.2d 939, 944 (3d Cir. 1985).

A valid complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Iqbal clarified that the Supreme Court's decision in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), "expounded the pleading standard for 'all civil actions.'" 556 U.S. at 684.

The Court in Iqbal explained that, although a court must accept as true all of the factual allegations contained in a complaint, that requirement does not apply to legal conclusions; therefore, pleadings must include factual allegations to support the legal claims asserted. *Id.* at 678, 684. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678 (citing Twombly, 550 U.S. at 555); see also

3

Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) ("We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests." (citing Twombly, 550 U.S. at 556 n.3)).  Accordingly, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

In evaluating a motion to dismiss, the Court "should conduct a two-part analysis." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  "First, the factual and legal elements of a claim should be separated.  The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." Id. at 210-11.  "Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" Id. at 211 (quoting Iqbal, 556 U.S. at 679).  "In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to show such an entitlement with its facts." Id. at 211 (internal quotation marks omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557).

A court "may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Brown v. Card Serv. Ctr., 464 F.3d 450, 456 (3d Cir. 2006) (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)).

**C. Plaintiff's *Pro Se* Status**

In resolving motions pursuant to Rule 12(b)(6), courts must liberally construe *pro se* pleadings. See., e.g., Haines v. Kerner, 404 U.S. 519, 521-21 (1972).  Claims by *pro se* litigants

4

may be dismissed under Rule 12(b)(6) only "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." McDowell v. Delaware State Police, 88 F.3d 188, 189 (3d Cir. 1996) (quoting Haines, 404 U.S. at 520).

### III. DISCUSSION

Local provides three arguments in support of its motion to dismiss.  First, Local argues that Mr. DiGenova's Complaint should be dismissed because it was not properly served.  Second, Local argues that, to the extent Mr. DiGenova has attempted to plead causes of action under the LMRDA and the PHRA, such claims should be dismissed for failure to state a claim pursuant to Rule 12(b)(6).  Third, Local argues that, to the extent Mr. DiGenova's Complaint pleads a cause of action for age discrimination under the PHRA, such claim should be dismissed for failure to exhaust administrative remedies as required under the Act.  The Court takes each argument in turn.

**A. Improper Service of Process**

Defendants argue that the complaint should be dismissed because it was not properly served.  After a complaint is filed, a plaintiff must obtain a valid summons from the Clerk of Court.  FED. R. CIV. P. 4(b).  Then, "[a] summons must be served with a copy of the complaint . . . within the time allowed by Rule 4(m)."  FED. R. CIV. P. 4(c).

*1. Rules Governing Service upon an Individual*

Rule 4(e) provides that service of a summons and complaint upon an individual within a judicial district of the United States can be achieved by:

> (1) following state law for serving a summons in an action brought in courts of general jurisdiction where the district court is located or where service is made; or
> (2) doing any of the following:
>     (A) delivering a copy of the summons and of the complaint to the individual personally;

>> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e).

Pennsylvania Rule of Civil Procedure ("PA Rule") 402 provides:

> (a) Original process may be served
>> (1) by handing a copy to the defendant; or
>> (2) by handing a copy
>>> (i) at the residence of the defendant to an adult member of the family with whom he resides; but if no adult member of the family is found, then to an adult person in charge of such residence; or
>>> (ii) at the residence of the defendant to the clerk or manager of the hotel, inn, apartment house, boarding house or other place of lodging at which he resides; or
>>> (iii) at any office or usual place of business of the defendant to his agent or to the person for the time being in charge thereof.

Pa. R.C.P. 402(a).

*2. Rules Governing Service upon an Unincorporated Association*

As Local is an unincorporated association, the Rules regarding service of process upon an unincorporated association apply. Rule 4(h) provides:

> Unless federal law provides otherwise or the defendant's waiver has been filed, a domestic or foreign corporation, or a partnership or other unincorporated association that is subject to suit under a common name, must be served:
>> (1) in a judicial district of the United States:
>> (A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or
>> (B) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and--if the agent is one authorized by statute and the statute so requires--by also mailing a copy of each to the defendant[.]

6

Fed. R. Civ. P. 4(h).

*3. Application of the Foregoing Rules to Mr. DiGenova's Attempted Service of Process*

While it is true that Mr. DiGenova's *pro se* status does not excuse him from complying with the Rules, "[d]ismissal of a complaint is inappropriate when there exists a reasonable prospect that service may yet be obtained." Daoud v. City of Wilmington, 894 F. Supp. 2d 544, 551-52 (D. Del. 2012). "Upon determining that process has not been properly served on a defendant, district courts possess broad discretion to either dismiss the plaintiff's complaint for failure to effect service or to simply quash service of process." Id. at 552 (quoting Umbenhauer v. Woog, 969 F.2d 25, 30 (3d Cir. 1992)). If service was insufficient, the court "may afford plaintiff another opportunity to attempt service in the event any of plaintiff's claims survive the motion to dismiss." Id.

Given the above rules regarding service of process on either an individual or unincorporated association, Mr. DiGenova's attempted service of process on both Mr. Mullins and Local was improper. Neither the Rules nor the PA Rules permit service of process upon an individual or unincorporated association by mail only. Here, Mr. DiGenova served his Summons and Complaint upon Local and Mr. Mullins via registered mail. ("Proof of Service," ECF 2).

Accordingly, although the Court concludes that service of process was insufficient, it may afford Mr. DiGenova another opportunity to attempt service in the event that any of his claims survive the motion to dismiss. As such, the Court will address Defendants' Rule 12(b)(6) grounds for dismissing Mr. DiGenova's LMRDA claim and PHRA age discrimination claim.

**B. Failure to Plead a Cause of Action for Denial of Labor Rights under the LMRDA**

Title I of the LMRDA provides union members with an exhaustive "Bill of Rights" enforceable in federal court. Local No. 82, Furniture & Piano Moving, Furniture Store Drivers,

Helpers, Warehousemen & Packers v. Crowley, 467 U.S. 526, 536 (1984) (citing 29 U.S.C. §§ 411-15). "In particular, Title I is designed to guarantee every union member equal rights to vote and otherwise participate in union decisions, freedom from unreasonable restrictions on speech and assembly, and protection from improper discipline." Id. at 536-37. The pertinent subparts of Section 101 of the LMRDA's Bill of Rights provide:

> (2) Freedom of speech and assembly
> Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: *Provided,* That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.
> \* \* \*
> (5) Safeguards against improper disciplinary action
> No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing.

29 U.S.C. § 411. Disciplinary action is also treated again in Section 609, where the LMRDA states that unions may not discipline their members for exercising any right to which they are entitled under the Bill of Rights. See 29 U.S.C. § 529 ("It shall be unlawful for any labor organization, or any officer, agent, shop steward, or other representative of a labor organization, or any employee thereof to fine, suspend, expel, or otherwise discipline any of its members for exercising any right to which he is entitled under the provisions of this chapter.").

*1. Section 101(a)(2) of the LMRDA*

In examining Section 101(a)(2) of the LMRDA, the United States Supreme Court has stated that "the legislators intended § 101(a) (2) to restate a principal First Amendment value—the right to speak one's mind without fear of reprisal." Reed v. United Transp. Union, 488 U.S. 319, 325 (1989) (citing Steelworkers v. Sadlowski, 457 U.S. 102, 111 (1982)). While a violation of First Amendment free speech rights by itself is insufficient to violate Section 101(a)(2), Sheet Metal Workers' Int'l Assoc. v. Lynn, 488 U.S. 347, 353 (1989), infringement of a union member's free speech must be viewed with reference to the basic objective of the LMRDA: "to ensure that unions [are] democratically governed, and responsive to the will of the union membership." Finnegan v. Leu, 456 U.S. 431, 441 (1982). In other words, the "subject matter of any protected speech must 'directly relate' to the union-member relationship." Kovach v. Turner Dairy Farms, Inc., 929 F. Supp. 2d 477, 490 (W.D.Pa.2013) (citing Semancik v. United Mine Workers of Am. Dist. No. 5, 466 F.2d 144, 154 (3d Cir.1972)). In this vein, the Third Circuit has directed district courts to take an "expansive view of union speech rights." See Foley v. Int'l Bhd. of Elec. Workers Local Union 98 Pension Fund, 91 F. Supp. 2d 797, 811 (E.D.Pa.2000) (citing Ruocchio v. United Transp. Union, Local 60, 181 F.3d 376, 386 (3d Cir.1999), cert. denied, 528 U.S. 1154 (2000)).

Reading the Complaint liberally, accepting all of Mr. DiGenova's allegations as true, and construing all facts in a light most favorable to him, the Court finds that Mr. DiGenova has not stated a claim for a violation of his rights to free speech and assembly under Section 101(a)(2). Mr. DiGenova's Complaint is utterly devoid of allegations that he engaged in any kind of free speech activity, either before or after he was allegedly blacklisted from working at certain hotels.

As such, Mr. DiGenova's claims pursuant to Section 101(a)(2) of the LMRDA will be dismissed.

*2. Sections 101(a)(5) and 609 of the LMRDA*

Nor does the Complaint state a claim under Sections 101(a)(5) and 609 of the LMRDA, because Mr. DiGenova alleges no official union action that amounts to "discipline." The reprisals Mr. DiGenova alleges in the Complaint accuse Defendants of refusing to refer him to certain hotels. However, the Supreme Court made clear in <u>Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6</u> that by using the phrase "otherwise discipline" in Sections 101(a)(5) and 609, "Congress did not intend to include all acts that deterred the exercise of rights protected under the LMRDA, but rather meant instead to denote only punishment authorized by the union as a collective entity to enforce its rules. Discipline is the criminal law of union government. The term refers only to actions undertaken under color of the union's right to control the member's conduct in order to protect the interests of the union or its membership." 493 U.S. 67, 91 (1989) (citation and quotations omitted). "[C]oercion, intimidation, and economic reprisals by union officers do not constitute 'discipline.'" <u>Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am.</u>, 927 F.2d 1283, 1297 (3d Cir.1991) (citing <u>Breininger</u>, 493 U.S. at 94); <u>Maier v. Patterson</u>, 511 F. Supp. 436, 444 (E.D. Pa. 1981) ("By the principle of ejusdem generis, the general expression 'otherwise disciplined' connotes action similar to the specific acts of fining, suspending, or expelling. What these specific acts have in common is that they stem from the peculiar authority of the union over its members.").

The Third Circuit has interpreted <u>Breininger</u> to require that an action meet three criteria before it can be considered discipline under Sections 101(a)(5) and 609:

> First, the suspension of job referrals by a hiring hall can qualify as "discipline," just as can a fine, suspension or expulsion. Second,

> the purpose of discipline must be to "enforce [the union's] rules," or to "punish a violation of union rules," as opposed to engaging in "ad hoc retaliation," motivated by "personal vendettas" such as a business agent's anger over a member's political views. Third, the punishment must be "authorized by the union," or carried out by the union in its "official capacity," through "some sort of established disciplinary process," such as being the subject of a "tribunal" or of "proceedings" conducted by the union.

Bullock v. Dressel, 435 F.3d 294, 298 (3d Cir.2006) (citations omitted). Here, Mr. DiGenova's allegations of failing to refer arguably meet the first criterion, but they fail to meet the second or third. There is no allegation that Mr. Mullins, or even Local, refused to refer Mr. DiGenova for the purpose of enforcing the union's rules or punishing Mr. DiGenova for a violation of those rules. See Bullock, 435 F.3d at 298 ("Retaliating against the authors of an informal complaint letter [via blacklisting] is not the enforcement of union rules.").

Nor do the allegations of refusing to refer rise to the level of formality required for it to be considered punishment "authorized by the union" or carried out by the union in its "official capacity." Mr. DiGenova does not claim that such refusal to refer was through any sort of "established disciplinary process"-he does not allege he was brought up on charges, fined, suspended, expelled or otherwise punished by a union tribunal. This lack of official action taken in the name of the union itself through an established disciplinary channel is fatal to Mr. DiGenova's Sections 101(a)(5) and 609 claims. See Bullock, 435 F.3d at 298 ("Dressel's refusal to refer the appellants, and mailing of a list of their names to other locals' managers in order to 'blacklist' them, does not resemble 'some sort of established disciplinary process,' nor did it make appellants the subject of a union 'tribunal' or 'proceeding' through which they could claim they were denied the procedural due process required by § 101(a)(5)."); see also Breininger, 493 U.S. at 94 ("In the instant case, petitioner alleged only that the union business manager and business agent failed to refer him for employment because he supported one of their political

11

rivals . . . . According to his complaint, he was the victim of the personal vendettas of two union officers.  The opprobrium of the union *as an entity*, however, was not visited upon petitioner. He was not punished by any tribunal, nor was he the subject of any proceedings convened by respondent. In sum, petitioner has not alleged a violation of §§ 101(a)(5) and 609"); Brenner, 927 F.2d at 1297 (finding blacklisting allegations in "this case [are] indistinguishable from Breininger because the union members failed to allege acts by the union acting in its official capacity and instead raised only ad hoc retaliations by the individual union official.").

Because Mr. DiGenova's refusal-to-refer allegations do not meet the Third Circuit's criteria for "discipline," his claims under Sections 101(a)(5) and 609 are dismissed.

## C. Failure to Exhaust Administrative Remedies

Before commencing a civil action under the PHRA, a party must allow the PHRC "an opportunity to investigate, and if possible, conciliate the matter."  Barr v. U.S. Reduction Co., No. 94-3291, 1996 WL 494142, at *2 (E.D. Pa. Aug. 22, 1996) (citing 43 Pa. C.S.A. § 962(c)); accord Churchill v. Star Enters., 183 F.3d 184, 190 (3d Cir. 1999) (stating the "PHRA provides that the PHRC shall have exclusive jurisdiction of an administrative claim for one year after its filing, unless the PHRC resolves the claim before the one year has elapsed.").

Mr. DiGenova filed his charge with the PHRC on March 15, 2016.  (Compl. at 15).  Mr. DiGenova filed his Complaint in federal court on March 16, 2016.  (ECF 1).  Hence, Mr. DiGenova's case was not before the PHRC for the full one-year period required by the PHRA prior to filing in federal court.  Furthermore, even had the requisite period of time passed, Mr. DiGenova's PHRC charge only states a claim for retaliation.  Therefore, Mr. DiGenova's claim for age discrimination under the PHRA should be dismissed because it was not included in the PHRC complaint and could not have grown out of his retaliation claim.  See, e.g., Thompson v.

Brandywine Sch. Dist., 478 Fed. App'x 718, 720 (3d Cir. 2012) (upholding dismissal of Title VII claims brought by a teacher proceeding *pro se* for failure to administratively exhaust those claims).

For the foregoing reasons, Mr. DiGenova's PHRA claim is barred and the Court grants Defendants' motion to dismiss this claim as unexhausted.[5]

## V. CONCLUSION

For the foregoing reasons, I will grant Local's motion to dismiss. Mr. DiGenova will not be given leave to file an amended complaint in this case because amendment would be futile. See Grayson v. Mayview State Hosp., 293 F.3d 103, 114 (3d Cir. 2002).

An appropriate Order follows.

O:\CIVIL 16\16-1222 DiGenova v UNITE HERE Local 274\Memo re Motion to Dismiss.docx

---

[5] To the extent that Mr. DiGenova's Complaint can be construed as containing a claim for retaliation under Title VII, the same reasoning applies. Before bringing a lawsuit under Title VII, a plaintiff must comply with the procedural requirements stated in 42 U.S.C. § 2000e-5. She must exhaust her administrative remedies by filing a charge with the Equal Employment Opportunity Commission ("EEOC") and an appropriate state agency. 42 U.S.C. § 2000e-5(a), (c). "The ensuing suit is limited to claims that are within the scope of the initial administrative charge." Barzanty v. Verizon Pa., Inc., 361 Fed. App'x 411, 413-14 (3d Cir. 2010). The scope of the lawsuit is defined by the scope of the EEOC charge. Id. Here, Mr. DiGenova has failed to demonstrate that he has satisfied the prerequisite exhaustion of his administrative remedies with respect to a claim for retaliation under Title VII.